Olin G. BLACKWELL, Warden, United States Penitentiary, Alcatraz, California, Appellant,

v.

Edward C. EDWARDS, Appellee.

Olin G. BLACKWELL, Warden, United States Penitentiary, Alcatraz, California, Appellant,

v.

Jack V. K. RAGAN, Appellee.

Nos. 17535, 17536.

United States Court of Appeals Ninth Circuit.

May 9, 1962.

**104**

Burke Marshall, Asst. Atty. Gen., Washington, D. C., Cecil F. Poole, U. S. Atty., San Francisco, Cal., Harold H. Greene, Gerald P. Choppin, Attorneys, Dept. Justice, Washington, D. C., for appellant.

Dario DeBenedictic, San Francisco, Cal., for appellee Edwards.

David Van Hoesen, San Francisco, Cal., for appellee Ragan.

Before BARNES and DUNIWAY, Circuit Judges, and ROSS, District Judge.

DUNIWAY, Circuit Judge.

These cases, although not consolidated, were considered and decided together by the trial court, and we do likewise. Each is an appeal from an order granting a writ of habeas corpus. In our view, each order was correct.

When his petition was filed, Edwards was in the United States Penitentiary at Alcatraz, serving three consecutive sentences imposed by Army Courts-martial, totalling 11 years and 8 months. These sentences were imposed after the effective date of the Uniform Code of Military Justice, May 31, 1951. The full term of these sentences was to expire on April 13, 1963. According to appellant's computations of "good time", after deducting "good time" forfeited, Edwards' release date was October 9, 1961. According to Edwards' computations, his release date was May 9, 1961. His petition was filed on June 7, 1961.

Ragan, too, was in Alcatraz when his petition was filed. He was an Air Force private, serving a ten-year sentence imposed by an Air Force general court-martial. This sentence was likewise imposed after the effective date of the Uniform Code of Military Justice. The full term of this sentence was to expire on November 27, 1962. According to appellant's computations of "good time", and after deducting "good time" forfeited, Ragan's release date was August 31, 1961. According to Ragan's computations, his release date was October 24, 1960. We think his computation may be in error, and that the date, accepting his figures, would appear to be December 13, 1960. However, the parties make no point of this, because his petition was filed March 8, 1961.

Basically, the same question is involved in each case; how is "good time" computed to determine the release dates of these prisoners? The government (the Warden of Alcatraz) makes two contentions: 1. That 18 U.S.C. § 4161, rather than the Army or Air Force regulations, applies, because these prisoners were in Alcatraz, and 2. That the method of computation used by the trial court gives the prisoners double good time credits for part of their period of confinement.

The statute upon which the government relies (18 U.S.C. § 4161), which applies specifically to civilian prisoners, provides:

"Each prisoner * * * shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, [to be credited as

earned and computed monthly] as follows:

\* \* \* \* \* \*

"Ten days for each month, if the sentence is ten years or more."

The brackets indicate language deleted in 1959 (73 Stat. 546).

The applicable Department of Defense, Army and Air Force Regulations were issued under 5 U.S.C.A. § 22 and 10 U.S.C. § 858(a) (formerly 50 U.S.C. § 639(a)) (See Edwards v. Madigan, 9 Cir., 1960, 281 F.2d 73, 77).

Defense Department Instruction Number 1325.4 was issued January 24, 1955, and is entitled "Uniform Policies and Procedures Affecting Military Prisoners and Places of Confinement". Under heading "III. *POLICY* A., *General Policy*", it is stated: "It is considered desirable that persons under sentence of courts-martial or other military tribunals be accorded uniform treatment, in keeping with the principles of unification and in justice to the individual. In the implementation of these uniform policies, the respective services will adopt the administrative procedures hereinafter set forth \* \* \*."

Subheading "O. *Abatement of Confinement,* 1. *Rate of Earning:* a. *Good Conduct Time:*" provides:

"(1) Each prisoner serving a sentence or sentences imposed by a court-martial or other military tribunal \* \* \* will \* \* \* be credited monthly with a deduction from the term of his sentence or sentences beginning with the day on which the sentence commences to run at the following appropriate rate:

\* \* \* \* \* \*

"Ten days for each month of the sentence, if the sentence is ten years or more.

"(2) In order to predetermine release dates, a prisoner may be credited at the beginning of his sentence to confinement with the regular good conduct time that can be earned in his case during the entire period of his sentence".

Under subheading "2. *Forfeiture, Withholding, and Restoration of Abatement*" appears:

"a. *Good conduct time.* If, during the term of imprisonment, a prisoner violates the rules \* \* \* or commits any offense, all or part of his earned good conduct time may be forfeited."

There is also a provision for withholding good conduct allowances in the month in which the violation occurs.

Subheading "Q. *Sentence Operation*" reads, in part:

"It is the purpose of the following provisions to provide uniform execution of sentences adjudged by the courts-martial \* \* \*.

\* \* \* \* \* \*

"6. *Computation of sentences.* Procedures employed in the computation of sentences will be in conformity with those published by the Department of Justice, which govern computation of sentences of federal prisoners and military prisoners under the jurisdiction of that Department."

Following the issuance of the foregoing Instruction, the Department of the Army issued Army Regulations 633–30 on September 27, 1955. Under "Section I, General" there appears:

"6. Abatement. a. Good Conduct Time.

"(1) Abatement of sentence for good conduct will be credited according to the rates authorized in sections II and III.

\* \* \* \* \* \*

"(3) In order to secure uniformity in computing abatement of terms of confinement, a prisoner will be credited at the beginning of his confinement under sentence with all good conduct time which can be earned during the entire period of his sentence. \* \* \*

"c. Abatement earned and credited while in Federal custody.

\* \* \* \* \* \*

"(2) Sentences adjudged on or after 31 May 1951.

"(a) The rate of earning abatement of sentence for good conduct is the same for prisoners confined in military and Federal penal or correctional institutions.

\* \* \* \* \* \*

"7. ·Forfeiture of abatements. a. Good conduct abatement.

"(1) If \* \* \* a prisoner violates the rules \* \* \* all or any part of the good conduct time which has been earned \* \* \* may be forfeited \* \* \*.

"(2) \* \* \* care will be taken not to impose a forfeiture in excess of the amount of good conduct time that has actually been earned at the date of the forfeiture.

\* \* \* \* \* \*

"(9) To determine the amount of good conduct time which may be forfeited, the rates prescribed in sections II and III will be used".

In our case, section III, "Sentences adjudged on or after 31 May 1951" applies. It provides:

"15.   Rate of abatement for good conduct.   Any prisoner \* \* \* will be credited with good conduct time on the sentence at the following applicable rates:

\* \* \* \* \* \*

"e.   Ten days for each month of the sentence for a sentence of 10 years or more. \* \* \*

\* \* \* \* \* \*

"16.   Crediting good conduct time earned in confinement.   To determine the amount of good conduct time a prisoner earned on time spent in confinement \* \* \* the following rates are applicable:

\* \* \* \* \* \*

"e.   For each month spent in confinement, 14.8 days if the sentence, other than for life, is 10 years or more.

"f. \* \* \* If the computation of the total amount of good conduct

time earned is for purposes other than forfeiture, the fraction of a day will be increased to the next whole number of days."

A number of examples are given, but they shed no light upon our problem.

Still later, and on September 2, 1956, the Air Force came out with its Air Force Manual No. 125–2. It "implements" the Department of Defense Instruction that we have previously quoted, "In keeping with the spirit and principles of unification." Its provisions, however, are slightly different from those of AR 633–30, quoted above. Ours "not to reason why".

It does contain provisions substantially the same as Section I. 6.a. (1) and (3) of AR 633–30. It does not contain a provision comparable to Section I. 6.c. (2) (a) of AR 633–30. It does contain provisions similar to Section I. 7.a. (1) and (2) of AR 633–30 and to Section III. 15. of AR 633–30. But the language comparable to Section III. 16. of AR 633–30 is different and reads:

"Forfeiting Good Conduct Time.

"To determine the amount of good conduct time a prisoner earned on time spent in confinement \* \* \*, for purposes of forfeiture, the following rates apply:

\* \* \* \* \* \*

"5.   For each month spent in confinement, 14.8 days if the sentence is more than 10 years \* \* \*."

Again, the examples given shed no light on our problem.

The government relies on various "Manual Bulletins", issued by the Director, Bureau of Prisons, Department of Justice. The first one that seems to us at all pertinent is No. 259, dated October 6, 1948, which refers to the bracketed language in the quotation of 18 U.S.C. § 4161, supra, that language having been added in 1948. Notwithstanding that language, bulletin 259 says:

"5.   Monthly Rate for Forfeiting and Withholding Good Time.

"Forfeiture of good time and good time withheld shall not exceed the following:

"On a sentence of .............
\*  \*  \*  \*  \*  \*

"Ten years or more: 14.8 days per month."

It also states in paragraph 3,

"\*  \*  \* the amount of forfeiture shall not exceed the amount earned. This will be computed in accordance with instructions in paragraph 5."

It says nothing about military prisoners.

Manual Bulletin No. 379, dated December 26, 1951, does deal with military sentences, but it expressly purports to apply only military regulations to military prisoners in Federal prisons. It refers to a Department of Defense "code of uniform policies and procedures applicable to prisoners of the Army, Air Force, Navy \*  \*  \*." It states that that code "incorporates changes in good conduct allowances and methods of sentence computation aimed at bringing the regulations of the several branches of the service in line with each other and with those applicable to federal prisoners sentenced from civil courts". It then states:

"Good Conduct Allowances

"On all military sentences \*  \*  \* good conduct deductions will be computed at the following rates:

| On sentence of: | Good time allowable per month of sentence (days) | Good time earned per month of confinement (days) |
|---|---|---|
| \* \* \* \* \* \* \* \* \* \* \* \* | | |
| Ten yrs. or more | 10 | 14.8 |

"It will be noted that the allowances are the same as those provided by Title 18, U.S.C., Section 4161, except for sentences of 1 year and less than 6 months. For sentences adjudged on or after 31 May 1951, good time will be allowed at the military rate, on the entire sentence, for all military prisoners committed to federal custody, regardless of the type of confinement originally designated.

"Good Time Forfeiture and Restoration.

"As heretofore, forfeiture of good time will be limited to the amount earned at the time the offense is committed \*  \*  \*."

Next came Manual Bulletin No. 395, dated June 19, 1952, announcing changes in computing forfeited and withheld good time, in line with the decision of the Court of Appeals for the Tenth Circuit in Hunter v. Facchine, 195 F.2d 1007. The bulletin states:

"This change also applies, in principle, to Army, Air Force, Navy, Marine, and Coast Guard prisoners \*  \*  \*. In computing good time subject to forfeiture or withholding in the case of military prisoners \*  \*  \* the rates per month of sentence promulgated by the Department of Defense \*  \*  \* will be used."

Finally, there is Manual Bulletin No. 489, November 19, 1959, dealing with the 1959 amendment to 18 U.S.C. § 4161. This sheds no light on our problem.

■■ What are we to deduce from this mass of material? Our first conclusion is that the crediting, earning, forfeiting and withholding of "good time" for military prisoners, at least since the effective date of the Uniform Code of Military Justice, is governed by the military regulations and not by 18 U.S.C. § 4161 or the regulations of the Director of the Bureau of Prisons, except to the extent that the latter's regulations

are the same as those of the military. So far as appears, no changes were made in the military regulations, either when Hunter v. Facchine, supra, was decided, or when Congress amended 18 U.S.C. § 4161 in 1959. The purpose of the Defense Department Instruction is stated to be to assure uniform treatment of military prisoners and uniform execution of sentences. We think that this means uniform treatment regardless of place of imprisonment as well as regardless of service. We have been cited to nothing which purports to make the Federal rate applicable to a military prisoner not confined in a Federal institution. AR 633–30, supra, expressly states, in Section I, 6.c.(2) (a), that the rate of earning abatement of sentence for good conduct is the same for prisoners confined in military or Federal institutions. This, in our opinion, makes the military rate applicable to all military prisoners; it does not make the Federal rate applicable to all military prisoners. Nor do we find any substantial significance in the differences between the Army and Air Force regulations. Moreover, the Manual Bulletins we have quoted recognize that there are differences between the two systems, and that the military rates apply to military prisoners. In short, the government's reliance upon 18 U.S.C. § 4161 is misplaced. Cases relied upon by the government, decided before the adoption of the Uniform Code of Military Justice, may be laid aside; they are no longer controlling.[1]

■ The second problem, how is "good time" to be computed under the military regulations, is more difficult. It will be observed that there are two methods of computing good time. One of these is 10 days for each month. The military regulations call it an "abatement" (Defense Dept. Inst. 1325.4, heading III. O., supra) to be "credited" monthly (Ibid, III. O. 1.a. (1)); AR 633–30 uses similar language (Sec. I. 6.a. (1) and III.15.). So does the Air Force manual. The practice of the Department of Justice, until Hunter v. Facchine, supra, was decided, was the same as that of the military, i. e., to "credit" the full amount of good time (in this case months of sentence x 10 days) upon the sentence at the beginning of the term, thus establishing a "minimum release date". (Defense Dept. Inst. 1325.4, supra, III. O. 1.a. (2); AR 633–30, supra, I. 6.a. (3); 2 U.S. Code Cong. & Adm. News 1959, p. 2519).

The other method is 14.8 days for each month served. This is *not* provided for in 18 U.S.C. § 4161, but is provided for in the military regulations, where it is referred to as a rate of "earning" good time (AR 633–30, supra, 1.7.a. (1) and (2), III. 16.e., f.; Air Force Manual 125–2, supra). It is also provided for in Manual Bulletin No. 259, supra, Par. 5. and Manual Bulletin No. 379, supra— again being referred to as "earned".

The 10-day and 14.8-day rates are interrelated. This can be shown by applying them to the case of appellee Ragan. His sentence began November 28, 1952, and ends (maximum term) November 27, 1962. Abating his sentence, at the beginning of his term, at the 10-day rate (10 years x 12 months x 10 days = 1200 days deducted from the end of the term) gives a "minimum release date" of August 14, 1959, and a minimum term of approximately 80.6 months. If he earns good time for each of those 80.6 months at 14.8 days, he will have earned almost 1200 days on the minimum release date. (The computation does not work out precisely because 14.8 is not carried beyond the first decimal).

The question is, does he still earn good time at the rate of 14.8 days per month of confinement if, by reason of forfeiture, he must serve beyond the minimum release date? The only suggestion in any regulation cited to us, that he does not, is in Air Force Manual 125–2, supra,

1. Bates v. Wilkinson, 5 Cir., 1959, 267 F.2d 779, and cases there cited; but see Green v. Schilder, 10 Cir., 1947, 162 F. 2d 803. Decisions dealing with conditional release, such as Easley v. United States, 10 Cir., 1958, 257 F.2d 174 are not apposite.

which, when setting up the 14.8 day per month rate, states that it is "for purposes of forfeiture". All other regulations, including the Manual Bulletins of the Bureau of Prisoners, speak of good time "earned", without restriction. The court below held, and we agree, that good time is earned on forfeited time actually served, and at the 14.8 day per month rate, subject, of course, to either forfeiture or withholding for disciplinary reasons, in accordance with the regulations.

To us, this is what the regulations intend, and we are further impelled to this conclusion by the view that the regulations should be construed in a way most favorable to the prisoner. We see nothing unfair or anomalous in this result. It gives the prisoner an incentive toward good behavior while he is serving forfeited time, and the prison authorities are not deprived of disciplinary authority because they can still, in proper cases, withhold or forfeit such good time.

Orders affirmed.