RONALD E. DALE, Lieutenant Colonel, U. S. Army, Petitioner

v

UNITED STATES;

JOHN H. HAY, Major General, Commanding General,
Fort Leavenworth, Kansas;

WILBUR S. DILLON, Colonel, Commandant, United States
Disciplinary Barracks, Fort Leavenworth,
Kansas, Respondents

19 USCMA 254, 41 CMR 254

Miscellaneous Docket
No. 69–55

February 27, 1970

*Scott E. Jarvis, Esquire,* argued the cause for Petitioner. With him on the brief was *Captain Ira J. Dembrow.*

*Captain Salvatore A. Romano* argued the cause for Respondents. With him on the brief were *Colonel David T. Bryant* and *Major Edwin P. Wasinger.*

## Opinion of the Court

DARDEN, Judge:

The petitioner is before us after we granted reconsideration of his petition for a writ of habeas corpus or other appropriate relief. The original petition failed to show that petitioner had applied for deferment of sentence to confinement under Article 57(d), Uniform Code of Military Justice, 10 USC § 857. After petitioner furnished a copy of his application for deferment of his sentence to confinement in accordance with the provisions of Article 57(d) of the Code, and a copy of the denial of this application by the convening authority, we ordered the respondents to show cause why the relief sought should not be granted and scheduled the case for oral argument.

A general court-martial at Fort Leavenworth, Kansas, convicted the petitioner of six specifications of lewd and lascivious acts, each involving youths under sixteen; two specifications of sodomy; two specifications of fraud upon the Government; and one specification of larceny. The court sentenced him to dismissal, total forfeitures, and confinement at hard labor for one year. On July 10, 1969, the date of the sentence announcement, the convening authority ordered the petitioner confined at the United States Disciplinary Barracks, Fort Leavenworth, Kansas. On October 2, 1969, the convening authority approved the findings and sentence and forwarded the case for review.

The petitioner contends that:

(1) Confinement of an officer in the United States Disciplinary Barracks before the convening authority has acted on the court-martial record violates Army regulations.

(2) His confinement during appellate review constitutes execution of his sentence, in violation of Article 71, Uniform Code of Military Justice, 10 USC § 871.

(3) In violation of Army regulations, he has been required to wear the prisoner uniform of the United States Disciplinary Barracks at all times; he has messed separately, as the regulations require, but at odd and unusual hours (during oral argument these hours were given as 5:50 a.m., 10:30 a.m., and 3:30 p.m.); he has been employed as a clerk-typist; he has not been addressed by his rank; he has been subject to orders and harassment by enlisted men; occasionally he has been stripped naked in front of other prisoners and subjected to exacting searches of his body; the number of his correspondents is limited, and his incoming and outgoing mail is inspected; his mail has been rejected because of pictures and clippings incidental to the message contained in the letter; and that incoming privileged communications have been inspected. (The regulations prohibit inspection of correspondence between a prisoner and certain officials of the executive branch, members of Congress, and his defense counsel.)

At the time of the petitioner's incarceration at the United States Disciplinary Barracks the regulation gov-

erning confinement then in effect was Army Regulation 633–5. Section II (4)(b)(2) of that regulation permitted designation of a United States Disciplinary Barracks as the place of confinement of an officer prisoner "convicted of a major crime of a heinous or aggravated nature; requiring special custodial control because of conduct; possessing characteristics of a dangerous, violent, or troublemaking nature; or if for other reasons, his retention within the command in which the trial was held is not practicable." This part of the regulation continues:

"(a) In determining the place of confinement and arranging disposition of an officer prisoner, cognizance will be taken of the requirement that a prisoner whose sentence has not been ordered executed will not be subjected to conditions of confinement more rigorous than necessary to insure his presence (art. 13 and paras. 18b(3) and 125, MCM 1951). The right of an officer to privileges pertaining to his rank precludes work assignments and results in prolonged idleness in most cases when confined in a disciplinary barracks. For this reason, consideration should be given to designating such a prisoner as an installation parolee with billet outside the stockade compound and assignment to duties consistent with the officer's rank but not involving command responsibilities.

"(b) The commanding officer of a stockade will include in his request for authority to transfer an officer prisoner to a disciplinary barracks the characteristics of the prisoner, or other circumstances which justify the request. A statement of the reasons for transfer will accompany the records of an officer prisoner transferred to a disciplinary barracks.

"(c) Authority to approve transfer of an officer prisoner to a disciplinary barracks is delegated to the Army commander of the area in which the officer prisoner is confined. In determining the necessity for transfer, the responsible commander will consider the feasibility of confinement of the officer prisoner at any installation within his command. When an officer prisoner is returned to the continental United States, the CONUS Army commander concerned will determine appropriate disposition (sec. III)."

A new Army regulation on this subject became effective on July 15, 1969, following confinement of the petitioner on July 10. The new regulation, AR 190-4, paragraph 1–3b(2)(b), provides that "a detained prisoner or officer prisoner whose sentence has not been approved by the convening authority will not be confined in a disciplinary barracks." An affidavit of the staff judge advocate that is an appendix to the Government's brief indicates that he obtained an exception to the regular policy from the office of the Provost Marshal General to permit petitioner's confinement at the United States Disciplinary Barracks if the court-martial that tried him awarded a sentence of confinement, since he had determined that the only facility available for temporary custody was the stockade at Fort Riley, Kansas, and that there were no facilities for confining officers there. Petitioner made no issue of whether the exception to policy was regularly granted. Since the convening authority approved petitioner's sentence on October 2, 1969, it appears that petitioner's confinement at the Disciplinary Barracks is not now violative of the current regulation.

In Reed v Ohman, 19 USCMA 110, 41 CMR 110 (1969), this Court has recently addressed itself to contentions that confinement during appellate review and that transfer of an accused to a disciplinary barracks pending appellate review violate Article 71(c) of the Code in that such action is tantamount to execution of the sentence. The Court reaffirmed that neither confinement during appellate review nor transfer of an accused to the disciplinary barracks is, standing alone, an execution of the sentence.

In response to the petitioner's allegations numbered (3) above the respondents contend that:

(a) The petitioner was required to wear the prisoner uniform, although the regulations provide that prisoners in his status normally would wear their service uniform during visits and on other appropriate occasions, because the number of adjudged prisoners at the Disciplinary Barracks (772 of the 1,265 prisoners confined) is so large that custodial and security problems make it impracticable to permit this number of prisoners to have access to their uniforms and to wear them on periodic occasions.

(b) The unusual meal hours result from the institution's not having separate facilities to feed officer prisoners. He eats in a separate area before mess call for the general population and his mess schedule is generally the same as that for enlisted custodial personnel on duty during meal hours.

(c) His employment as a clerk-typist is being performed voluntarily.

(d) There is no evidence to substantiate the claim that the petitioner is subjected to orders and harassment by enlisted men. The institution requires officer prisoners to be addressed by rank and that they be extended the appropriate courtesies and privileges.

(e) The searches that have been conducted are for security reasons. They charge that petitioner has been known to take documents to the visitor's room, in violation of the institution's policy. To control the introduction of contraband prisoners are stripped and searched after visits. The Commandant has ordered that the petitioner not be "strip-searched" at any time except after a visit.

(f) The departures from practice applicable to the handling of mail under current regulations are at least partially attributable to a change in the applicable confinement regulations that became effective on July 15, 1969. Implementation of the new procedures required some time. They insist that stamping, reading, and inspection of outgoing mail has ceased and that incoming mail is not censored but inspected to control the introduction of contraband. The respondents contend further that inspection was particularly indicated for petitioner's mail because homosexual pornographic correspondence was addressed to him in the past. (Petitioner's counsel asserted that at least some of this correspondence was of the "mailing list" type.)

(g) There is no evidence to indicate that incoming privileged communications have been inspected. (There is no indication whether outgoing correspondence to privileged correspondents has been inspected.)

The Government suggests that the petition is, in effect, a request for review of the denial by the convening authority of petitioner's request for deferment of sentence under Article 57 (d) of the Code. This article provides that deferment of confinement pending execution of the sentence is within the "sole discretion" of the convening authority or other officer exercising general court-martial jurisdiction in the command to which an accused is assigned. Quoting from the legislative history of this provision that: "The discretion exercised would be very broad and would be vested exclusively in the convening authority or the officer exercising general court-martial jurisdiction,"[1] the Government contends that a decision on an application under Article 57 (d) is not subject to judicial review. On the other hand, petitioner argues that the "sole discretion" language was intended to prohibit delegation of this authority.

In his application for deferment of sentence during appellate review, petitioner indicated that: (a) appellate review involved several complex questions of law for resolution by the appellate courts; (b) he would not be a danger to the community or a repeat offender if released; and (c) a return to duty pending appellate review would facilitate his continuing to pay court

---

[1]Senate Report No. 1601, 90th Congress, Second Session (1968).

ordered child support payments of $250.00 a month. In support of (b) above, he referred to testimony at his trial by persons who stated they would trust him with their children, his not having previous military or civilian convictions, and his not having been in confinement for three months while awaiting trial.

The convening authority's denial of the application does not explain the reasons for his action. The Government produced an affidavit from the staff judge advocate that explains his reasons for recommending against favorable consideration. In this affidavit the staff judge advocate disclaimed any suspicion that the petitioner would flee to avoid service of the sentence. He pointed out, however, that as a trained aviator with a top secret security clearance the petitioner might be susceptible to blackmail by an unfriendly foreign power. Although he considered the sex offenses not dangerous in a violent sense, the staff judge advocate thought release of the petitioner might adversely affect the moral and emotional well-being of the community. While the same officer had recommended against pretrial confinement of the petitioner, "[o]nce the presumption of innocence was destroyed by the findings of the court, I saw no reason to grant any preferential treatment based upon his rank or position."

Different observers might view with varying degrees of concern the impact upon a military community of the release of an officer convicted of child molestation. Assuming without deciding that such a decision ■ is reviewable for abuse of discretion, we believe a judgment that release of such an officer was likely to have a serious impact is not arbitrary, unreasonable, or capricious.

Article 138, Uniform Code of Military Justice, 10 USC § 938, provides that:

"Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon."

Under this article if the petitioner believes he is wronged in the manner of his confinement and the ■ commanding officer refuses relief, the petitioner may cause his complaint to be brought to the attention of the officer exercising general court-martial jurisdiction over his commanding officer. The officer exercising general court-martial jurisdiction must examine into the complaint and send to the Secretary of his military department a statement of the complaint and his actions on it. If a complaint under Article 138 produces no corrections, the petitioner can present to the Court of Military Review, which has fact-finding power, evidence that his confinement was more rigorous than necessary. The court may take any such violation into account in its determination of an appropriate sentence. United States v Nelson, 18 USCMA 177, 39 CMR 177 (1969). And if his case is to be reviewed by this Court, we can review earlier asserted claims that conditions of incarceration and work were indistinguishable from those of sentenced prisoners or that confinement was more rigorous than necessary to assure presence.

Owing to the availability of other remedies and recognizing that except in extreme cases courts do not interfere with the conduct of a prison, with the enforcement of its rules and regulations, or discipline (Childs v Pegelow, 321 F2d 487 (CA 4th Cir) (1963), certiorari denied, 376 US 932, 11 L Ed 2d 652, 84 S Ct 702 (1964)), extraor-

dinary relief is inappropriate in this instance. Accordingly, the request for reconsideration of the petition for writ of habeas corpus is denied.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

My brothers hold that owing to the availability of other remedies (appeal to higher authorities under Article 138, Uniform Code of Military Justice, 10 USC § 938, and, where appropriate, reassessment of sentence by the Court of Military Review or by this Court under the principles established in United States v Nelson, 18 USCMA 177, 39 CMR 177 (1969)) and recognizing that except in extreme cases courts do not interfere with the conduct of a prison, with the enforcement of its rules and regulations, or discipline, extraordinary relief seems inappropriate in this instance. I cannot agree with that view because I believe that it contravenes the plain import of this Court's opinion in Reed v Ohman, 19 USCMA 110, 41 CMR 110 (1969).

Reed had been convicted by a general court-martial convened at Andrews Air Force Base. He petitioned this Court seeking release from confinement pending appellate review of the conviction or, alternatively, to prevent his transfer from the Fort Belvoir Center Confinement Facility, where he was then confined, to the United States Disciplinary Barracks, Fort Leavenworth, Kansas. We denied his petition on the ground that since *nothing in his petition* indicated that the established regime of the Disciplinary Barracks would result in unlawful conditions of confinement, it did not justify judicial interference with current efforts to maintain restraint.

This case is unlike *Reed* in that this accused has, *in detail*, set forth the conditions of his current confinement in the Disciplinary Barracks. These conditions can only be described as punitive. The Government's response is more in the nature of an explanation rather than a denial. It appears there-from that the accused is required to follow the regular procedures for all prisoners because to do otherwise would tax the facilities of the institution. Any other standard would result in the giving of preferential treatment to an adjudged prisoner-accused only because his sentence has not yet been executed. Even the staff judge advocate, who recommended to the convening authority that the accused's request for deferment of sentence under Article 57(d), Code, supra, 10 USC § 857, be denied, did so on the ground that "[o]nce the presumption of innocence was destroyed by the findings of the court, I saw no reason to grant any preferential treatment based upon his rank or position."[1]

The idea that a person, whose sentence has not yet been executed, is being given preferential treatment by having his sentence to confinement deferred under Article 57(d), Code, supra, is absurd. The function of the statute is to toll the service of the sentence which begins to run on the day announced by the court (Article 57(b), Code, supra) whether the accused is confined or not. Deferment of the sentence will stop that. When the sentence is finally ordered into execution, the time remaining must still be served and the accused can then be considered as a sentenced prisoner without any of the restrictions imposed by the operation of Article 71(c), Code, supra, 10 USC § 871.

I can readily appreciate the inherent difficulties encountered within a disciplinary institution when it must make separate provision for prisoners whose sentences have not been ordered into execution. However, this is the law of the land and all concerned with its administration must obey the law. Difficulty in complying therewith is no excuse. In my view, the adoption by the Congress of the provisions of Article 57(d), Code, supra, is the perfect answer to this problem. It should be viewed as an attempt not only to benefit one whose sentence might be

---

[1]The accused was not confined prior to trial.

reversed or ameliorated on appeal, but also as an effort to alleviate a situation, with regard to the handling of certain confinees, which undoubtedly is viewed by disciplinary authorities as overburdening and intolerable. Convening authorities should give serious consideration to this situation when passing on applications for deferment of service of sentence.

In Reed v Ohman, supra, at page 115, we said:

". . . [T]he decision to restrain is reviewable for abuse of discretion. Levy v Resor, . . . [17 USCMA 135, 37 CMR 399 (1967)]; United States v Howard, . . . [2 USCMA 519, 10 CMR 17 (1953)]."

In my opinion, so, too, is the decision of the convening authority not to defer service of sentence to confinement under Article 57(d), Code, supra. Cf. United States v Jennings, 19 USCMA 88, 41 CMR 88 (1969), where we found an abuse in the pretrial confinement (Article 13) of that accused.

I cannot leave this question without expressing my concern over the manner in which the Government has replied to our order to show cause why a writ of habeas corpus, or other appropriate relief, should not be granted. In this, as in other cases, it has been the staff judge advocate or a correctional officer who, through counsel, has replied to the Court's order. This, in my opinion, is not proper procedure. It is the convening authority who, by the exercise of statutory authority, orders the accused confined and it is he alone who is being called upon to establish the legality of that confinement, not the staff judge advocate. The same explanation should be forthcoming from the commanding officer of the disciplinary barracks, in those cases wherein he was not also the convening authority, with reference to the terms of the confinement. The staff judge advocate is only the legal advisor and we lessen the majesty of the military judicial process when we accept an explanation from one other than the responsible judicial officer.

**260**

As noted above, my brothers base their holding, in part, on the fact that except in extreme cases courts do not interfere with the conduct of a prison, with the enforcement of its rules and regulations, or discipline. Childs v Pegelow, 321 F2d 487 (CA 4th Cir) (1963), certiorari denied, 376 US 932, 11 L Ed 2d 652, 84 S Ct 702 (1964). I agree with this position, and, with regard to military prisoners whose sentence to confinement has properly been ordered into execution, I would follow it unhesitatingly. That, however, is not the situation facing us in this petition. The confined military accused, whose sentence has not become final, occupies a unique position by virtue of the Uniform Code of Military Justice for which there is no civilian precedent. The ordinary civilian rule is not applicable to these situations.

On February 10, 1970, the following self-explanatory document was filed with this Court:

"1. On 20 November 1969, the above captioned matter came on before the court for oral argument on a 'Petition for Writ of Habeas Corpus, or in the Alternative Other Appropriate Relief'. The matter was on that date taken under advisement by the court. No decision as of this date has been rendered by the court.

"2. That since the filing of this action and continuing to date Relator Ltc Dale, has been subjected to increased debasement, harassment, and cruel, unusual and entirely inappropriate interference with his rights. In support thereof, Petitioner shows to the Court that to the best of his knowledge and belief all of the practices of the government complained of in the petition herein and heard by the court during oral argument herein have been continued by the government and in addition thereto have been increased in their frequency and severity. Petitioner believes relator to have been unnecessarily injured at the hands of government guard personnel; that relator's laundry has been on occa-

sion withheld from him for as long as two weeks and that these and other acts of harassment etc. have been continued and have been increased as reprisal for the filing of this action. Petitioner is positively certain that following every consultation with his counsel relator is subjected to an exacting strip search, which means that relator is made to strip naked and is thoroughly examined to the extent of his scrotum being moved aside and inspected under and his anal orifice being manually examined. Relator's counsel is a member of the bar of this and other courts and is a person of honor and integrety [sic] and cannot imagine what item or article might be so concealed during a consultation between counsel and client so as to require such an examination. Counsel can certainly say that not all of his officer-prisoner clients in the same status as relator are subjected to similar treatment. Counsel can further state that as a result of the severity of these strip search indignities relator has requested counsel to avoid personally consulting with him unless absolutely necessary. It appears to counsel that the attorney-client privileges and relationship has been unnecessarily and wrongfully interfered with by these acts of the government.

"3. These interferences and harassments have been called to the attention of the officials of the United States Disciplinary [sic] Barracks many times by relator with no apparent results and not even any hesitation in their continuance. There is no reason, therefore, to believe that at the present or within the foreseeable future there will be any improvement in the lot or circumstances of relator.

"4. That the relief prayed for herein is the only form of relief available to relator at this time, short of the relief prayed for in the original petition in this action.

"WHEREFORE, it is by petitioner for relator moved and prayed for to the court that the court grant and issue an order totally suspending during the pendency of this action the operation of the orders under which relator is now confined and either subjecting relator to deferment or bond or bail or to a less severe form of restraint than that which he is now suffering, or in the alternative petitioner moves the court for such other or further relief as may be deemed just and equitable in the premises by this honorable court."

My brothers have voted to deny this second motion for appropriate relief without argument. In view of the information set forth in the above-quoted motion, I would again direct the Government to show cause why the relief sought should not be granted.

Since I believe that the terms and conditions of the accused's confinement are more rigorous than required to insure his presence during appellate review (see Reed v Ohman, supra), I would grant the relief requested. Inasmuch as the Government has not demonstrated that it is capable of confining the accused in accordance with the law, I would order his release.