**UNITED STATES, Appellant,**

v.

**Charles RICHARDSON, Private U. S. Marine Corps, Appellee.**

No. 37,667.
NCM 78 1298.

U. S. Court of Military Appeals.

Jan. 7, 1980.

For Appellant: *Captain E. A. Burnette,* USMC (argued).

For Appellee: *Lieutenant J. G. Van Winkle,* JAGC, USNR (argued); *Commander T. C. Watson, Jr.,* JAGC, USN (on brief).

*Opinion*

FLETCHER, Chief Judge:

The appellee, pursuant to his pleas, was found guilty of numerous violations of the Uniform Code of Military Justice.[1] On June 5, 1978, he was sentenced by military

---

1. One specification of misbehavior of a sentinel; 13 specifications of larceny; 2 specifications of housebreaking, in violation of Articles 113, 121, 130, Uniform Code of Military Justice, 10 U.S.C. §§ 913, 921, 930, respectively.

judge alone to a dishonorable discharge, confinement at hard labor for 4 years, and total forfeitures. Based upon this adjudged sentence, the commandant at the United States Disciplinary Barracks [2] began crediting the appellee with good time at the rate of 7 days per month as of the above date.[3]

On August 24, 1978, the convening authority approved the finding and sentence except the dishonorable discharge, which he reduced to a bad-conduct discharge. In addition, the convening authority suspended the execution of confinement in excess of 18 months for the period of actual confinement and 6 months thereafter.[4]

Prison authorities, in response to this action, recomputed appellee's good time at the rate of 6 days per month as of June 5, 1978.[5] On February 22, 1979, the appellee filed an application for a writ of extraordinary relief, in the nature of habeas corpus, which challenged this recomputation.[6] The United States Navy Court of Military Review, wherein the above writ was filed, denied relief on February 26, 1979.[7]

The above court subsequently entertain direct review of appellee's court-martial under Article 66, UCMJ, 10 U.S.C. § 866. The appellee incorporated his claim for extraordinary relief as an assignment of error. On May 8, 1979, the Navy Court of Military Review affirmed the findings and sentence. In addition, it determined that the appellee had been prejudiced by the erroneous calculation of good time. Accordingly, in light of the failure of his earlier applications for relief, it directed [8] that appellee's good time earned commencing June 5, 1978, be computed on the basis of 7 days per month. A Government motion for reconsideration was denied on June 14, 1979.

The Judge Advocate General, citing Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2), certified the following question of law to this Court on July 12, 1979:

> Whether the U. S. Navy Court of Military Review erred on a matter of law when it held that the total amount of a sentence to confinement at hard labor, both suspended and unsuspended portion included, controls computation of good time credits for Marine Corps prisoners confined at the U. S. Disciplinary Barracks, Fort Leavenworth, Kansas?

At the outset, it is important to realize that the present case does not strictly fall within the purview of the decision in *United States v. Larner*, 1 M.J. 371 (C.M.A. 1976). That case involved direct review by this Court under Article 67(b)(3), UCMJ, 10

---

2. The appellee was a Marine confined at the United States Disciplinary Barracks, Fort Leavenworth, Kansas, under the control of the Department of the Army. *See* Article 58(a), UCMJ, 10 U.S.C. § 858(a). *See also* Appendix A to this opinion.

3. There is no specific section in the Uniform Code of Military Justice which expressly provides for the award of good time credits to military prisoners. However, service regulations contain such provisions. *See* para. III O.1 *a*(1), DOD Inst. 1325.4 (Oct. 7, 1968); Army Regulation 633–30, paras. 6, 13 (Nov. 6, 1964); SECNAVINST 1640.9, Section 1009 (May 31, 1973). These service regulations govern, with certain codal and constitutional limitations, the award of good time credit in prisons controlled by the armed forces. *See Blackwell v. Edwards*, 303 F.2d 103, 107–08 (9th Cir. 1962).

4. The suspension period was the term of actual confinement plus 6 months thereafter with provision for automatic remission. *See* Articles 71(d), and 74(a), UCMJ, 10 U.S.C. §§ 871(d) and 874(a), respectively.

5. *See* Army Regulation 633–30, para. 13.f, *supra*; SECNAVINST 1640.9, Section 1009.7 (June 1972).

6. Citing *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), as a jurisdictional base, the relief sought in this petition was recomputation of appellee's good time credit earned between June 5, 1978, and August 24, 1978.

7. The Navy Court of Military Review denied extraordinary relief because, even accepting the merits of the petition, Private Richardson would not be entitled to immediate release from confinement at that time. Accordingly, it concluded such matter may be considered on direct review without irreparable harm to him.

8. *See Dale v. United States*, 19 U.S.C.M.A. 254, 41 C.M.R. 254 (1970); *see also Dettinger v. United States*, 7 M.J. 216, 218–19 (C.M.A.1979); *Kelly v. United States*, 1 M.J. 172 (C.M.A.1975).

U.S.C. § 867(b)(3), of appellate action taken by the Court of Military Review to cure pretrial error. The appellate action of the Court of Military Review combined with the operation of the good time system created the situation where that appellant actually served 196 more days in confinement after appellate review purportedly in his favor. The legality and adequacy of such remedial action was found wanting in light of Articles 64 and 66, UCMJ, 10 U.S.C. §§ 864 and 866.

Private Richardson's situation is significantly different. Here the action of the convening authority, as a matter of largesse, in partially suspending the sentence reduced the time actually to be served in confinement by approximately 30 months. The action of prison authorities in recomputing his good time brought about a forfeiture of 3 days good time credit already earned. In addition, they established a new and lower rate of good time credit for the remaining 15 month term of confinement. Unlike the *Larner* situation, however, the appellee's minimum release date from confinement was not extended due to corrective action purportedly taken by reviewing authorities.

■ The first issue to be resolved in this certification concerns the forfeiture of good time credit *already* earned by a military prisoner on account of suspension of a portion of his sentence to confinement. The forfeiture, approximately 3 days in the present case, was accomplished by recomputation of the minimum release date of the appellee by prison authorities after the convening authority's action in his favor. The Government argues that such a procedure is authorized by Army and Navy Regulations as customarily interpreted by prison authorities.[9] No rational justification is otherwise offered for this forfeiture. *Cf. McGinnis v. Royster,* 410 U.S. 263, 274–77, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973).

The prison authorities' interpretation of these regulations is unnecessarily broad and an obvious injustice to the military prisoner.

*See* DOD Inst. 1325.4, para. III A.1. (Oct. 7, 1968); *Blackwell v. Edwards,* 303 F.2d 103, 109 (9th Cir. 1962). It is clearly in opposition to relevant federal case law concerning the forfeiture of good time previously earned. *North Carolina v. Pearce,* 395 U.S. 711, 718–19, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *See also* DOD Inst. 1325.4, para. III Q.6 (Oct. 7, 1968). Finally, and perhaps most importantly, it conflicts with the regulations of the Department of Defense which strictly control the forfeiture of good time credit of military prisoners. *See United States v. Schauer,* 6 M.J. 748, 750 (N.C.M.R. 1978). *See also* DOD Inst. 1325.4, para. III O.2 (Oct. 7, 1968). The Navy Court of Military Review was correct in ordering that this prisoner be credited with good time at the 7-day rate between June 5, 1978, to August 24, 1978.

■ The second issue raised from the rather general inquiry of the Judge Advocate General is whether good time credit *to be earned* by a military prisoner may be recomputed at a lower rate by military prison authorities upon the convening authority's suspension of part of the sentence. The Department of Defense has issued no regulation with respect to this situation. The Government argues that Army and Navy Regulations permit such a recomputation. The Navy Court held that, although recomputation is permissible on the basis of a lower approved sentence, suspension of sentence has no effect on the computation of sentence to be actually served.

This is incorrect. Such a holding is in conflict with the express language of Article 57(b), UCMJ, 10 U.S.C. § 857(b).

§ 857. Art. 57. Effective date of sentences

(b) Any period of confinement included in a sentence of a court-martial begins to run from the date the sentence is adjudged by the court-martial, *but periods during which the sentence to confinement is suspended* or deferred *shall be excluded in computing the service of the term of confinement.* (Emphasis added.)

---

**9.** *See* n. 5, *supra.*

Moreover, it is inconsistent with relevant federal case law. *See DeSimone v. Norton,* 404 F.Supp. 964, 967 (D.Conn.1975); *Abrams v. Goodwyn,* 186 F.Supp. 271 (N.D. Fla.1960). Finally, the equal protection of law analysis posited by the Navy Court of Military Review is not convincing in light of the rational purpose behind a graduated good time credit schedule. A prisoner facing a 4-year term of actual confinement is not similarly circumstanced nor does he require the same motivation as a person facing 18 months of actual confinement. *See Royster Guano Co. v. Commonwealth of Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). Any parity in these predicaments escapes us.[10]

The certified question of the Judge Advocate General is answered in the above manner. To the extent that the decision of the Court of Military Review exceeds the ordering of good time credit for the period of June 5, 1978, to August 24, 1978, it is set aside. The appellee is unaffected by this decision since he is presently out of confinement and the term of his sentence to confinement has expired under either good time schedule.[11]

STATEMENT OF UNDERSTANDING CONCERNING DISPOSITION OF CORRECTIONS MATTERS RELATING TO MARINE CORPS PRISONERS CONFINED AT THE U. S. DISCIPLINARY BARRACKS

3 April 1974

The Department of the Army is responsible for control, maintenance, and correctional treatment of Marine Corps prisoners confined at the U. S. Disciplinary Barracks and the administrative processing of matters pertaining to such individuals. The Department of the Army is also responsible for prisoner administrative disciplinary action other than punishment awarded under the Uniform Code of Military Justice. The Department of the Navy is responsible for functions relating to mitigation, remission and suspension of sentences, parole, restoration to duty, and transfer to Federal institutions.

/s/ Joseph T. McCullen, Jr.
JOSEPH T. MCCULLEN, JR.
Assistant Secretary of the Navy
(Manpower and Reserve Affairs)

COOK, Judge (concurring in the result):

I have previously expressed the view that the determination of administrative credit for time served in confinement is not a proper question for courts-martial proceedings and I adhere to that view. *See* my dissent in *United States v. Larner,* 1 M.J. 371, 376 (C.M.A.1976). The Navy Court of Military Review has intervened in the present case and directed that appellant's "good time" credit be computed at a rate different from that determined by the prison officials. Thus, I would normally direct that this entire recomputation be set aside. Chief Judge Fletcher directs reversal of the Court of Military Review's decision, except for the period of confinement served between June 5, 1978, and August 24, 1978, on the ground that prison officials improperly ordered a forfeiture of good-time credit for this period, which he regards as having been earned. I do not consider the recomputation of the good-time credit as a forfeiture. As the initial computation was predicated upon the sentence adjudged by the

---

**10.** My views with respect to the Navy's "good time" credit scheme were earlier expressed in my concurring opinion in *United States v. Larner,* 1 M.J. 371, 375–76 (C.M.A.1976). As indicated there, I have no general equal protection objection to a graduated schedule of good time credit. My concern is with the method of operation of such a scheme which in certain cases would permit a person, serving the greater sentence to confinement, to be released prior to a person serving a lesser sentence. *Id.* at 376.

However, in Private Richardson's case, there is no chance that due to this scheme alone he would be released at a date later than a prisoner with a 4-year unsuspended sentence and the greater good time rate.

**11.** The appellee was released from confinement on July 20, 1979, after serving approximately 1 year, 1 month and 15 days. *See* Article 57, UCMJ, 10 U.S.C. § 857.

court-martial, which is merely inchoate, not final,[1] it was necessarily tentative; and finality is not attainable until reviewing action affecting the sentence is complete. That circumstance is recognized in the Navy regulation on the subject. *See* SEC-NAVINST 1640.9, para. 1009.7.

As note 11 of Chief Judge Fletcher's opinion indicates, the accused has been out of confinement for almost 5 months. The record indicates he is back in the civilian community. By the time this Court issues its mandate, the 6-month period of suspension of the confinement is likely to have expired or to be so near expiration as to be virtually certain that vacation proceedings will not be initiated. Realistically, therefore, the accused will be, as the Chief Judge observes, "unaffected" by whatever this Court holds as to his good time credit. I see no point, however, in continuing the proceedings in this Court. I, therefore, join in remanding the record to the Court of Military Review for such action as it may deem appropriate to insure no disadvantage to the accused.

1. *See* Articles 64 and 66, Uniform Code of Military Justice, 10 U.S.C. §§ 864 and 866.