UNITED STATES, Appellee

v

HAROLD B. CHRISTENSEN, Major, U. S. Air Force, Appellant

12 USCMA 393, 30 CMR 393

■■■■■■■■■■■■■■■

No. 14,758

Decided April 28, 1961

■■■■■■■■■■■■■■■

*Major William A. Crawford, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel James L. Kilgore.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief was *Colonel Merlin W. Baker.*

## Opinion

GEORGE W. LATIMER, Judge:

The accused was tried by a general court-martial and convicted of nine specifications alleging various violations of Article 108, Uniform Code of Military Justice, 10 USC § 908. The court sentenced him to be reprimanded and to be suspended from rank for twelve months. The convening authority, in acting on the sentence, affirmed the reprimand but commuted the suspension from rank for the term involved to a forfeiture of $25.00 per month for a like period. Thereafter, pursuant to Article 69 of the Uniform Code, 10 USC § 869, the case was referred to a board of review which affirmed the findings and sentence as commuted. The Judge Advocate General of the Air Force certified the following issue to this Court under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867:

"Was the Board of Review correct in its determination that the convening authority in this case could legally 'commute' that portion of the sentence providing for suspension from rank to a forfeiture of pay of $25.00 per month for twelve months?"

The legal issue raised by the certified question is not easy of solution because its answer requires a ■■■■■■■ comparison of the value of imponderables with cash, and the tables of conversion are as flexi-

ble as the beliefs of those who must examine the nature of the punishments. However, the issue is before us and to simplify our discussion we first dispose of one preliminary matter. The Chief Judge and Judge Ferguson in United States v Russo, 11 USCMA 352, 29 CMR 168, held that convening authorities had the power to commute sentences adjudged by courts-martial. The power, however, was circumscribed by two limitations; namely, that the punishment to which the sentence adjudged could be commuted must be no more severe than that originally imposed by the court-martial and that the sentence as changed be one which was within the court's sentencing power. With regard to the latter condition, we need not be concerned. Obviously, forfeitures are a permissible penalty and suspension from rank has long been recognized as a legal sentence for officers of the Army and Air Force; we recognized it as proper punishment in United States v Grow, 3 USCMA 77, 11 CMR 77. We therefore turn to the critical limitation.

It must be recognized that under military law certain appellate processes are automatic, and a convening ■■■■■■ authority must act on a sentence before it becomes fixed. Having power to commute, he must be allowed some latitude in selecting punishment which he believes is less severe than that imposed by the court-

martial. There being no common denominator in the many forms of permissible penalties, we conclude the best workable rule requires an affirmance of his judgment on appeal unless it can be said that, as a matter of law, he has increased the severity of the sentence. With that principle in mind, we turn to consider the comparative harshness of the sentence adjudged by the court with the punishment affirmed by this reviewing officer. Parenthetically, we mention that in the case at bar we are at least favored with unanimity for, in addition to the convening authority, the staff judge advocate and a unanimous board of review have concluded that forfeitures in the amount affirmed were less severe than the suspension from rank even though, in the words of the late Judge Brosman in United States v Kelley, 5 USCMA 259, 264, 17 CMR 259, they were compelled to "compare chalk with cheese."

In assessing the nature of the punishment imposed by the court-martial, we are not disposed to reject the views of the board of review as they are logical and find support in other authorities. The board in its decision stated:

". . . Suspension from rank denies the offender the privileges incident to such rank; the right to exercise military command and all of the prerogatives pertaining thereto; the right to give orders, the right to exact obedience from inferiors; the right to convene courts and boards; it operates to detach the officer from use and service and finally places him in a status which is patently abnormal and embarrassing."

Colonel Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 411 and 412, states the character of the punishment to be this:

"**Suspension from rank.** This punishment involves a deprivation, during the period of the operation of the sentence, not only of the right of command but of all other rights and privileges incident to the rank, as such, of the officer, whether held in his relation to other officers or to enlisted men. Thus it deprives him of any right of promotion accruing during the term of suspension to which he would have been entitled had he not been suspended, and causes the same to accrue to the officer next junior. It renders him ineligible to sit upon a court-martial, court of inquiry, or military board, and also divests him of the right of priority and precedence in the exercise of the minor privileges of the officer, such as the privilege of the selection of quarters whenever quarters become available for selection pending the term of suspension. And so of any other right or privilege of priority, obedience, or deference, which would otherwise have been due to his rank; the same, with its incidents, remaining, during the term of the suspension, dormant and inoperative.

.   .   .   .   .

"**Suspension from command.** This punishment merely deprives the officer of authority to exercise his proper military command, (devolving it upon his junior or some other officer specially assigned to the same,) and consequently of his right to give orders to, or exact obedience from, his inferiors, to convene the courts and boards which he would be empowered to convene by virtue of his command were he not suspended, to sign muster-rolls, reports, discharges, &c., as commanding officer, to appoint or reduce non-commissioned officers, to grant furloughs, make arrests, &c. It does not affect his right of promotion, or any military rights or privileges incident to rank or office, or other than those attaching simply to command as such. It is thus not in general an appropriate punishment for a staff officer. It is also evidently a considerably less severe punishment than suspension from rank."

From the foregoing, it is obvious that the punishment imposed by the court-martial is intangible in nature and its monetary equivalent is not readily ascertainable. However, there are some guidelines which aid us in making a rough conversion. The accused, a major, was suspended from rank and denied the right of command for a one-year period of time and, while the cash value of the loss of those privileges is

unliquidated, it is certain that any reasonable officer of field grade would gladly pay some amount to escape that sort of penalty. Forfeitures of pay are flexible in that the sums forfeited may be fixed between the bottom limit of the monetary scale and the total amount earned by the accused. Certainly, all reasonable persons would conclude that, had the convening authority ordered $1.00 per month to be forfeited, the commuted sentence would have been less severe than the one adjudged by the court-martial. On the other hand, had the convening authority imposed total forfeitures, it could be said reasonably that the punishment was in excess of that imposed by the court. While the outside limits pose no problem, those in between require a certain amount of guesswork. However, in the case at bar, it is neither feasible nor necessary for us or anyone else to fix the precise amount which would change the forfeiture to a more severe form of punishment, and that we do not propose to do. Our problem here is merely to determine whether the $25.00 per month taken from a major's pay has that effect. In rationalizing on that question, the board of review had this to say:

"Contrasted with the manifold disabilities consequent upon suspension from rank, forfeiture as in this case, (of a sum representing something less than 4% of accused's pay per month) is certainly of minimal consequences. When we balance these considerations against the imposition of a nominal forfeiture, we have no alternative but to conclude that suspension from rank not only preponderates in severity but that every rational commissioned officer would prefer such a forfeiture to a punishment carrying the serious disabilities as flow from suspension for a like period."

There is another consequence included in the suspension which may be given some consideration in assessing the relative severity of the two sentences. The staff judge advocate who recommended commutation laid aside the monetary value of the privileges of rank and command and based his comparison on the loss of entitlement to Government quarters. While any loss of that sort is speculative, it cannot be said to be entirely imaginary and, when added to the other penalties we have mentioned, leads to the inevitable conclusion that the convening authority was modest in fixing the amount of the forfeitures. On the comparative severity facet of the controversy, the staff judge advocate had this to say:

"Pretermitting the impossible determination of the monetary value which might be placed upon the right to exercise command and enjoy the normal functions and powers of a major's rank, I turn to consideration of Major Christensen's loss of priority dependent upon rank in the selection of quarters. While I am sure that loss of the prerogatives of a field grade officer to command, with the resulting loss of prestige, are more severe than the forfeiture of one cent, or one dollar, or fifty dollars, I believe this loss is not accurately nor properly measurable in terms of dollars and cents. Nevertheless, there is a measurable market-place value upon the loss of priority to entitlement to government quarters. Since we are concerned with matters of broad principle, we need not determine what that precise monetary value is, but need only observe, from our own everyday experience, that renting and occupying off-base housing comparable to the government quarters to which a major is entitled, would assuredly result in an out-of-pocket expense exceeding $25.00 per month, if only for utilities."

Having discussed the factors tending to support the contention that the convening authority lessened the punishment, we look to the accused's side of the ledger. Appellate defense counsel argue that the monthly forfeitures actually increased the court's sentence because its execution would merely relieve the accused from extra duties, such as officer of the day, membership on courts and boards, and marching in parades—details they choose to characterize as more onerous than honorable, a characterization we do not accept. In addition, in their oral arguments

396

they advanced the contention that the loss of preferment to quarters is merely a makeweight to support a weak assertion, for that possibility does not exist in the case of this accused. However, in their brief on appeal, they gloss over the loss of prestige and social status. In addition, they give little, if any, consideration to the other penalties necessarily included in suspension of command, such as the loss of respect of those who serve with or under the accused and his disqualification to exercise control or influence over them. True it is that the accused's conviction alone would diminish the respect which is necessarily associated with an officer of his field grade rank. Nevertheless, the sentence strips him of sufficient privileges that he personally does not seek to have the punishment originally adjudged by the court-martial reimposed. Obviously, what he desires is to escape both the suspension and the forfeitures, but to that relief he is not entitled for, if the convening authority increased the severity of the sentence, his act was illegal but the lesser penalty could be affirmed by him on remand. However, we believe that course need not be taken because the unliquidated losses flowing from the suspension have sufficient value to equal or exceed the total sum ordered forfeited by the convening authority. Such being the case, he did not go beyond the boundaries of his discretionary area.

This conclusion is entirely consistent with Article 15 of the Uniform Code of Military Justice, 10 USC § 815. That Article authorizes an officer competent to convene a general court-martial to forfeit one-half of one month's pay of an officer, but it does not grant him the power to suspend the offender from rank or command. From that, it can be gleaned that Congress concluded a forfeiture of the specified amount was the lesser of the two punishments.

In view of the difficulty encountered in comparing one form of punishment with another of an entirely different character, we believe a caveat is in order. In the usual criminal systems, a defendant's sentence is not likely to be commuted unless he affirmatively petitions to have it changed or agrees to accept the substituted punishment. In the military system, the convening authority and a board of review must act on the sentence regardless of the wishes of an accused. No problems are encountered in the usual situations where there is a reduction in kind but, when the conversion is such that the nature of the new punishment is not readily comparable with the old, it would appear much the better procedure to offer the accused an opportunity to reject any proposed commutation. In this case, the appellate processes are nearing the end, yet nowhere in the record is there any indication that this accused prefers the substituted punishment which we conclude to be the lesser. Certainly, it should be apparent to all that if the staff judge advocate had followed the procedure we have outlined, he would have removed all doubt about the substitution being influenced by his or the convening authority's displeasure with the "anachronistic" form of punishment imposed by the court-martial. We make this observation for, in the case at bar, the court-martial concluded not to adjudge direct monetary punishment against accused, but rather to impose mental sanctions on him. Without his request or acquiescence, he ends up with the punishments reversed, and the board of review and this Court are required to weigh the quantum of punishments according to an objective standard in the scales of the reasonable man. Had accused been required to make the determination, he would, be in no position to claim the wrong scales were used.

The certified question is answered in the affirmative and the decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur in the result.