*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

## UNITED STATES
Appellee

**v.**

## Nathan G. LEESE, Private First Class
United States Army, Appellant

**No. 25-0024**
Crim. App. No. 20230250

Argued April 8, 2025—Decided June 4, 2025

Military Judge: J. Harper Cook

For Appellant: *Lieutenant Colonel Ryan S. Coward* (argued); *Colonel Philip Staten, Lieutenant Colonel Autumn Porter,* and *Major Robert Luyties* (on brief).

For Appellee: *Captain Nicholas A. Schaffer* (argued); *Colonel Richard E. Gorini, Major Lisa Limb,* and *Captain Anthony J. Scarpati* (on brief); *Major Justin L. Talley.*

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, Judge HARDY, and Judge JOHNSON joined.

———————————

Chief Judge OHLSON delivered the opinion of the Court.

## I. HOLDING

We hold as follows: Confinement credit mandated by *United States v. Pierce*[1] applies only to a segmented sentence that corresponds to an offense that previously served as the basis for nonjudicial punishment; *Pierce* credit does not apply to an aggregate term of confinement.

## II. OVERVIEW

Since its inception in the 1950s, Article 15 of the Uniform Code of Military Justice (UCMJ), has included some form of the following provision:

> The imposition and enforcement of disciplinary punishment under this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, and not properly punishable under this article; but the fact that a disciplinary punishment has been enforced may be shown by the accused upon trial, and when so shown shall be considered in determining the measure of punishment to be adjudged in the event of a finding of guilty.

10 U.S.C. § 815(f) (2018).

In *United States v. Pierce*, our predecessor court reached two key conclusions upon interpreting this passage. First, the *Pierce* court noted that "[i]t is clear from the language of this provision that Congress did not intend for imposition of nonjudicial punishment to preclude the subsequent court-martial of a servicemember accused of a serious offense." 27 M.J. at 368. And second, the *Pierce* court opined that "[i]t does not follow that a servicemember can be twice *punished* for the same offense." *Id.* at 369. In regard to the latter point, Judge Cox invoked the memorable phrase that "in these rare cases, an accused must be given

---

[1] 27 M.J. 367 (C.M.A. 1989).

*complete* credit for any and all nonjudicial punishment suffered: day-for-day, dollar-for-dollar, stripe-for-stripe." *Id.*

Although the *calculation* of what has become known as "*Pierce* credit" has always been somewhat intricate,[2] the *application* of that credit used to be quite simple. "When Congress first enacted the UCMJ, courts-martial adjudged only one sentence even if they found the accused guilty of multiple offenses." *United States v. Flores*, 84 M.J. 277, 280 (C.A.A.F. 2024). Under this "unitary sentencing" approach, a military judge would simply "subtract" the amount of *Pierce* credit from the total adjudged sentence. But no more. "In the Military Justice Act of 2016, . . . Congress introduced segmented sentencing in which a separate term of confinement and fine is adjudged for each specification [for] which there was a finding of guilty when sentencing is conducted by the military judge." *United States v. Smith*, 2024 CAAF LEXIS 759, at \*20 n.5, 2024 WL 4941954, at \*7 n.5 (C.A.A.F. Nov. 26, 2024). So, instead of "unitary sentencing" in the military justice system we now have "segmented sentencing."[3]

### III. FACTS

All of this leads us to the facts in this case. Here, the military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of two specifications of willfully disobeying a superior commissioned officer and one specification of assault consummated by a battery in violation of Articles 90 and 128, UCMJ, 10

---

[2] A Table of Equivalent Nonjudicial Punishments has now been created to facilitate that calculation. Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 2, § V, para. 2-7-21, tbl.2-10 (2020).

[3] Rule for Courts-Martial (R.C.M.) 1002(b)(3) expands on this point: "All punishments other than confinement or a fine available under R.C.M. 1003, if any, shall be determined as a single, unitary component of the sentence, covering all of the guilty findings in their entirety. The military judge shall not segment those punishments among the guilty findings." (At the time of Appellant's court-martial, this provision was at R.C.M. 1002(d)(2)(C) (2019 ed.).)

U.S.C. §§ 890, 928 (2018). The military judge then sentenced Appellant as follows: to be reduced to the grade of E-2; to be discharged from the service with a bad-conduct discharge; to be confined for fourteen days for the first Article 90 specification; to be confined for thirty days for the second Article 90 specification; and to be confined for three months for the Article 128 specification. The military judge then ruled that the periods of confinement would run concurrently.[4] However, because Appellant already had received nonjudicial punishment for the two Article 90 specifications, the military judge also ruled that Appellant was entitled to receive *Pierce* credit.

The parties agreed that consistent with the holding in *Pierce*, Appellant should receive confinement credit. However, they disagreed about how that credit should be applied. The Government argued that the confinement credit should apply only to the separate sentences imposed for each Article 90 violation. In other words, the Government took the position that fourteen days of credit should be applied to the sentence of confinement for one Article 90 offense, and the other fourteen days of credit should be applied to the other Article 90 violation. The defense, on the other hand, argued that the *Pierce* credit should apply to the sentence as a whole. In other words, trial defense counsel took the position that because the segmented sentences were to run concurrently, the twenty-eight days of *Pierce* credit should be applied to the three months of total confinement Appellant was scheduled to serve.

In response, the military judge explained his views of the issue.

> Rarely have I found myself in a position where I have no guidance whatsoever. On whether to blindly follow *Pierce* with a disregard to segmented sentencing and, frankly, with a disregard

---

[4] R.C.M. 1002(d)(2)(B) (2019 ed.) states that "[i]f a sentence includes more than one term of confinement, the military judge shall determine whether the terms of confinement will run concurrently or consecutively."

to the nature of the Article 15s themselves. If I were to do that, the argument would be the accused is getting credit where credit is not due. After all, if he received Article 15s for disobedience, he should get credit for the disobedience offenses. That's the one hand.

On the other hand, if I'm going to follow the government's proposed solution, I'm in uncharted waters having to apply what used to be black-and-white sentencing credit principles . . . . But the appeal of the government's argument is that there's no danger of either over crediting the accused or under []crediting . . . the accused with what he's entitled to.

The military judge then ruled in favor of the Government and applied the *Pierce* credit only to the two Article 90 offenses "[b]ecause these Article 15s are so specific and are basically lifted from the Article 15s themselves to this charge sheet." Accordingly, he credited Appellant with one pay grade credit against the sentence to reduction, fourteen days of credit against the segmented sentence of confinement imposed for the first Article 90 specification, fourteen days of credit against the segmented sentence of confinement imposed for the second Article 90 specification, and $1,142 against any automatic forfeitures.[5] The military judge noted in the judgment of the court that even "[a]fter applying those credits and then running the segmented confinement sentences concurrently, the total adjudged sentence to confinement remains 3 months."

The CCA subsequently affirmed the military judge's ruling. *Leese*, 84 M.J. at 753. We then granted Appellant's petition for grant of review on the following issue: "Whether the military judge and the Army Court correctly applied *United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989)

---

[5] The United States Army Court of Criminal Appeals (CCA) later concluded that the credited amount for any automatic forfeitures should have been $1,042. *United States v. Leese*, 84 M.J. 748, 751 n.4 (A. Ct. Crim. App. 2024). Trial defense counsel used the correct amount in her R.C.M. 1106 submission to the convening authority.

in awarding credit for Appellant's two prior instances of nonjudicial punishment to a segmented sentence." *United States v. Leese*, __ M.J. __ (C.A.A.F. 2024) (order granting review).

## IV. STANDARD OF REVIEW

"*Pierce* credit has long been considered a form of confinement credit." *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019). The proper application of a confinement credit is a question of law reviewed de novo. *See United States v. Spaustat*, 57 M.J. 256, 260 (C.A.A.F. 2002) (reviewing de novo the "applications of credit for illegal pretrial punishment and lawful pretrial confinement"); *see also United States v. Harris*, 78 M.J. 434, 436 (C.A.A.F. 2019) ("This Court reviews the question whether an appellant is entitled to pretrial confinement credit de novo." (citation omitted)). Therefore, determining the proper application of *Pierce* credit is a question of law which we review de novo.

## V. DISCUSSION

In its brief, the Government argues that *Pierce* credit should only be applied "to the segmented sentence for the offense previously punished" via nonjudicial punishment (NJP). Otherwise, "an accused would receive both the benefit of a concurrent sentence and *Pierce* credit, with the *Pierce* credit applying to punishments for offenses that were wholly separate and of a different degree of criminality than the NJP offenses." Indeed, the Government asserts that taking a different approach could result in a convicted servicemember receiving a sentencing "windfall."

In contrast, Appellant offers a number of arguments in support of his position that "*Pierce* credit must be applied against the total adjudged sentence." In sum, Appellant argues that this approach "is consistent with past practice, [comports with] the awarding of other forms of sentence credit, ensures all portions of the sentence receive meaningful relief, and recognizes that the government controls the charge sheet." We will address each of Appellant's arguments in turn.

First, Appellant notes that the military judge's application of *Pierce* credit in the instant case "had *zero* impact on the length of the sentence that [A]ppellant [actually] served. . . . [Although] [A]ppellant's sentence was shortened on paper, it was not reduced in reality." He then avers that any *Pierce* credit afforded by a military judge must be "meaningful," i.e., it must have a tangible effect on the punishment the servicemember actually experiences.

We disagree. We begin by noting that in support of his position, Appellant cites cases such as *Spaustat*, 57 M.J. at 256, *United States v. Larner*, 1 M.J. 371 (C.M.A. 1976), and *United States v. Suzuki*, 14 M.J. 491 (C.M.A. 1983). However, as he acknowledges, those cases involved illegal pretrial confinement credit—not *Pierce* credit—and we conclude that both the reasoning and the holdings in those two areas of the law are not interchangeable. We reach that conclusion because deterring the government from improperly placing a servicemember in pretrial confinement is patently distinct from ensuring that a convicted servicemember receives sentencing credit at a court-martial if he already had received nonjudicial punishment for the same offense via a lawful Article 15.[6]

---

[6] Appellant seeks to tie together these two lines of cases as follows: "Though *Larner* and *Suzuki* dealt with illegal pretrial confinement and its processes, this Court in *Gammons* explained that *Pierce* credit should be adjudicated 'in a manner similar to [the] adjudication of credit for illegal pretrial confinement.'" (Alteration in original.) (Quoting *United States v. Gammons*, 51 M.J. 169, 184 (C.A.A.F. 1999).) However, we do not ascribe to this passage from *Gammons* the same meaning that Appellant apparently does. The full sentence from the *Gammons* opinion states as follows:

> If the accused chooses to raise the issue of credit for prior punishment during an Article 39(a) session rather than on the merits during sentencing, the military judge will adjudicate the specific credit to be applied by the convening authority against the adjudged sentence in a manner similar to [the] adjudication of credit for illegal pretrial confinement.

And further, we reject Appellant's contention that *Pierce* credit must result in a tangible benefit because: applicable statutes are silent on this point; our case law imposes no such requirement; and as reflected below, we find no basis to impose such a mandate.

Second, Appellant urges this Court to "adopt a simple-to-apply principle that requires *Pierce* credit [to] be applied against the total adjudged sentence . . . . This proposal is easy to apply, easy to understand, and ensures consistency of application across the services and potential sentences." However, we do not find this point compelling. Simply stated, all of the benefits cited in favor of applying *Pierce* credit to the total adjudged sentence pertain equally to a determination that *Pierce* credit applies only to the segmented sentence that corresponds to the offense that previously served as the basis for nonjudicial punishment.

Third, Appellant argues as follows:

> The government has a choice: punish an accused via nonjudicial punishment; via court-martial; or do both. When it does both, an accused must be afforded credit to prevent double punishment . . . . The government should not be permitted to charge prior non-judicial punishment and then hide behind the shield of concurrent sentences to punish the appellant twice for the same misconduct . . . .

However, we simply do not agree with Appellant's contention that a convicted servicemember will receive "double punishment" if *Pierce* credit is applied to the segmented sentence that corresponds to the offense that previously served as the basis for nonjudicial punishment rather than to the term of confinement as a whole. To the contrary, we conclude that even when a convicted servicemember does not receive tangible relief in terms of a reduction in his

---

*Gammon*s, 51 M.J. at 184. This broader context makes it clear to us that the *Gammons* court was not opining that because credit for illegal pretrial confinement must result in tangible relief then *Pierce* credit must also result in tangible relief. Rather, the *Gammons* court was merely mentioning a procedural point.

period of confinement because of a concurrent sentence, the imperative of the *Pierce* decision still will be obeyed—namely, the convicted servicemember will *not* be "twice *punished* for the same offense." 27 M.J. at 369.

The CCA explained this point with concision and clarity:

> [*Pierce* confinement credit should] be applied only to the segmented sentence for the offense previously punished under Article 15, UCMJ, and not to the total sentence to confinement when the accused is convicted of other offenses. This ensures an accused is not punished twice for the same offense while also ensuring the accused does not receive credit when no credit is due. Whether the military judge determines the sentences to confinement shall run concurrently or consecutively, the result is the same. The accused receives relief that is effective and meaningful towards the offense for which he has already been punished and not towards an offense for which he has not.

*Leese*, 84 M.J. at 752. For these reasons, we answer the granted issue in the affirmative.

## VI. CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.